NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1373
(Serial No. 09/572,128)

IN RE HENRY GLEIZER

Henry Gleizer, of New York, New York, pro se.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were Sydney O. Johnson, Jr., and Scott C. Weidenfeller, Associate Solicitors. Of counsel was Thomas W. Krause, Associate Solicitor.

Appealed from: United States Patent and Trademark Office
Board of Patent Appeals and Interferences

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1373
(Serial No. 09/572,128)

IN RE HENRY GLEIZER

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

_____

DECIDED:  December 15, 2009

_____

Before LOURIE, DYK, Circuit Judges, and KENDALL, District Judge.[*]

LOURIE, Circuit Judge.

Henry Gleizer appeals from the final decision of the Board of Patent Appeals and Interferences ("Board") affirming the examiner's rejection of all twenty claims of appellant's patent application as obvious under 35 U.S.C. § 103. Ex parte Gleizer, No. 2007-2033 (B.P.A.I. Mar. 6, 2008). Because the Board did not err in its decision, we affirm.

## BACKGROUND

Gleizer filed U.S. Patent Application 09/572,128 (the "'128 application" or "Gleizer's application") on May 17, 2001, claiming priority from a provisional application filed on August 27, 1999. Gleizer's application claims Systems and Methods for

---

[*]    Honorable Virginia M. Kendall, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

Electronically Facilitated Transactions. Claim 89 of the '128 application reads as follows:

> 89. An automated transaction method for enabling a transaction of electronic funds and physical goods between a buyer and a seller, said automated transaction method comprising:
>
>     a.    accessing information comprising:
>         (1) an electronic funds payment instrument information corresponding to said transaction of said electronic funds, and
>         (2) a shipping information corresponding to said transaction of said physical goods, said shipping information comprising a shipping address;
>     b.    receiving said electronic funds using said electronic funds payment instrument information;
>     c.    printing a shipping label comprising said shipping information, and a shipment tracking information;
>     d.    checking a delivery status of said physical goods using said shipment tracking information; and
>     e.    disbursing said electronic funds to a party comprising a customer selected from the group consisting of said seller and said buyer.

The patent examiner assigned to the '128 application issued a final rejection of all pending claims. The examiner found that U.S. Patent 6,219,653 ("O'Neill") taught all of the limitations of claim 89 of Gleizer's application, with the exception of "printing a shipping label" as recited in subparagraph (c) of claim 89. The examiner cited U.S. Patent 6,889,194 ("Kadaba") as teaching that limitation. The examiner concluded that one skilled in the art would have found the combination of O'Neill and Kadaba to have been obvious. The examiner therefore rejected claim 89. Claims 98 and 101 are independent claims that recite machines performing the method of claim 89. The examiner found that those claims were substantially similar to claim 89, and were also obvious. The remaining claims are dependent upon claims 89, 98, and 101. Dependent claims 90 and 102 add a limitation that the "party" comprises a broker

hosting the transaction. The examiner found that those claims were also substantially similar to claim 89, and were obvious. Claim 91 and 103 add a limitation that the electronic funds payment instrument information comes from a group that includes different types of financial account information. The examiner found that the use of an automated clearing house ("ACH") in O'Neill teaches the claimed Markush group. Claims 92, 97, 100, 104, and 108 add verification of payment and shipping information and the use of such verified information in the claimed transaction method. The examiner found that O'Neill and Kadaba disclose the fact that such information can be verified, thereby rendering those claims obvious. Claims 93 and 105 add a claim limitation for placing electronic funds in escrow. The examiner found that the use of an escrow was well-known to those of ordinary skill in the art and that those claims would have been obvious. For the same reason, the examiner also found claims 94, 95, 96, 99, 106, and 107 to be obvious. Gleizer appealed the examiner's rejections to the Board.

The Board affirmed the examiner's decision. On each of the claims at issue, the Board agreed with the examiner that together O'Neill and Kadaba taught every limitation of the claim. The Board rejected Gleizer's argument that there was no reason to combine the two pieces of prior art cited by the examiner. The Board found that O'Neill is directed to a freight calculation system and that generation of freight data presents a need to print details of shipping transactions. The Board found that Kadaba is directed to preparing electronic shipping records. The Board noted that Kadaba expressly describes how its disclosed shipping software permits parcel delivery companies to provide their customers with an improved and more efficient service. The Board

2009-1373

concluded this description would motivate one of ordinary skill in the art to use the Kadaba software along with the automated system disclosed in O'Neill. The Board also rejected Gleizer's argument that there was a specific order required in the steps recited in his rejected claims which would not have been obvious from the cited prior art. The Board found Gleizer's remaining arguments unpersuasive and affirmed the examiner's rejection of all the claims pending in Gleizer's application.

Gleizer filed a request for rehearing at the Board which was denied. Gleizer timely appealed the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

Section 103 of title 35 of the U.S. Code "forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 405 (2007) (quoting 35 U.S.C. § 103). "Determination of obviousness under 35 U.S.C. § 103 is a legal conclusion based on underlying facts." In re Kumar, 418 F.3d 1361, 1365 (Fed. Cir. 2005). This court reviews "the Board's ultimate determination of obviousness de novo," while the Board's underlying findings of fact are reviewed under a substantial evidence standard. In re Kotzab, 217 F.3d 1365, 1369 (Fed. Cir. 2000).

On appeal, Gleizer presents the same arguments that he presented to the Board. Primarily, Gleizer argues that the examiner failed to make a showing of an apparent reason to combine the elements known separately in the prior art in a fashion claimed

by his patent application.  Gleizer contends that the Board failed to articulate such a reason, instead citing "mere conclusory statements" such as "more efficient service," "design need," and "market pressure" as motivations to combine the known elements.

In response, the Director of the Patent and Trademark Office ("PTO") argues that Gleizer's claims are nothing more than a predictable variation of elements disclosed in O'Neill and Kadaba.  Such a predictable combination is unpatentable under the Supreme Court's decision in KSR.  Moreover, the Director argues, the Kadaba shipping software system purports to permit improved and efficient service for a shipping customer, thereby providing a reason for an automated transactions system such as the one in O'Neill to make use of it.

We agree with the Director.  Under KSR, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  Id. at 416.  In KSR, the Court offered guidance on when a combination might be obvious under § 103:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

550 U.S. at 421.  Under KSR, we conclude that Gleizer's proposed combination of elements from O'Neill and Kadaba would have been obvious to a person of ordinary skill in the art.

Gleizer also argues that for each of the claims at issue, the cited prior art does not teach every limitation of the claim.  Regarding claim 89, Gleizer argues that neither

2009-1373

O'Neill nor Kadaba teaches the use of electronic funds payment instrument information and shipping information in the same manner as Gleizer has claimed in limitations (b), (c), and (d). However, we find that the Board specifically addressed each of those limitations in its order. The Board explained that O'Neill discloses how electronic funds transfer information is accessed and used to enable a payee to receive a payment, similar to the funds transfer step claimed in limitation (b) of claim 89. See Ex parte Gleizer, No.2007-2033, slip op. at 13. The Board noted that in one embodiment, O'Neill discloses tracking of shipments prior to transfer of funds for the shipment, similar to the tracking step claimed in limitation (d). Id. at 14. The Board agreed with the examiner that claim limitation (c), related to printing a label with shipping information, was taught by Kadaba. Id. at 11. We agree with the Board that the prior art teaches every single limitation of claim 89.

Gleizer argues that even if every limitation of claim 89 is found in the prior art, the claim also requires a specific sequence that is not taught by the prior art. He argues that his claimed method requires that electronic funds be received from the buyer before the purchased goods are shipped. To support his proposition, Gleizer points to the fact that the specification describes the steps in a sequence. In response, the Director argues that the PTO is required to give claims their broadest reasonable interpretation and that it would be improper for the PTO to read Gleizer's suggested sequential limitation into his application's claims.

We have held that unless the steps of a method actually recite or implicitly necessitate a specific order, the steps are not ordinarily construed to require one. Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1342–43 (Fed. Cir.

2001). We agree with the Board that Gleizer has failed to show how a sequence of steps described in one embodiment mandates a narrow construction of the claim. See In re Bigio, 381 F.3d 1320, 1325–26 (Fed. Cir. 2004) ("Absent claim language carrying a narrowing meaning, the PTO should only limit the claim based on the specification or prosecution history when those sources expressly disclaim the broader definition."). We therefore agree that the Board properly affirmed the examiner's rejection of claim 89.

Gleizer argues that claims 98 and 101 claim "interfaces" that are functionally different from those taught in O'Neill. According to Gleizer, O'Neill is non-analogous art directed to an entirely different problem from that solved by his invention. In response, the Director contends that O'Neill teaches the use of a computer communication network to carry out its trading system, and therefore that O'Neill inherently teaches interfaces for inter-process communications like those claimed in Gleizer's application. The examiner found that both O'Neill and Gleizer's application relate to electronic funds transfer and transaction of goods and that O'Neill was analogous art to Gleizer's claimed invention. Thus, the examiner concluded that the use of interfaces taught in O'Neill rendered claims 98 and 101 obvious. The Board affirmed the examiner's decision. Ex parte Gleizer, No. 2007-2033, slip op. at 23.

We agree with the Board that a person of ordinary skill in the art would have considered O'Neill to be related to the same subject matter as the claims at issue. KSR, 550 U.S. at 1741 ("[T]he analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.").

2009-1373

Given that the system disclosed in O'Neill teaches transfer of data between its various components, the use of the claimed interfaces would in fact have been obvious to a person of ordinary skill in the art.

Regarding claims 90 and 102, Gleizer argues that there was no evidence to support the Board's finding that the ACH disclosed in O'Neill teaches funds being disbursed. Gleizer argues that the prior art only teaches transfer of electronic funds between trading clients, and does not teach a broker who could host a seller-buyer transaction. In response, the Director argues that O'Neill teaches an accounting server that facilitates electronic funds transfer between a seller, a buyer, and optionally a bank using an ACH. The Board found that processing disbursements through an ACH is a well known mechanism that clearing houses employ. Ex parte Gleizer, No. 2007-2033, slip op. at 24. In light of this teaching, it was proper for the Board to find claims 90 and 102 to have been obvious.

Gleizer next argues that claims 92 and 104 would not have been obvious because the use of verified payment and shipping information was not taught in the prior art. Gleizer concedes that Kadaba teaches verification of zip code information, but argues that that is not the same as verification of shipping or payment information corresponding to a specific customer. The Director responds that a zip code is part of any shipping information, and the rejected claims do not in any way limit the scope of the claimed verification. Moreover, the Director points out, ONeill also addresses verification of invoices. We agree with the Director that the prior art contains sufficient teaching to have rendered the verification of payment and shipping information obvious

to a person of skill in the art. For the same reason, we affirm the Board's conclusion that claims 97, 100, and 108 would also have been obvious.

With regard to claims 93 and 105, Gleizer argues that the use of an escrow account with the claimed system would have been nonobvious. Gleizer argues that the Board engaged in improper hindsight in reaching its conclusion of obviousness because that limitation is clearly not found in the cited prior art. In response, the Director argues that in rejecting these claims, the examiner took official notice that escrowing was well known in the art. The Director notes that Gleizer failed to object to the examiner's notice. Therefore, the Director urges us to affirm the Board's decision.

We have held that "[a]n obviousness determination is not the result of a rigid formula disassociated from the consideration of the facts of a case" and that the "common sense of those skilled in the art demonstrates why some combinations would have been obvious where others would not." Leapfrog Enters. v. Fisher-Price, Inc., 485 F.3d 1157, 1161 (Fed. Cir. 2007). Adding an escrow account to the cited prior art would have been common sense and reasonably obvious to one of ordinary skill in designing a system for transaction of goods using electronic funds.

We also reject Gleizer's argument that the Board improperly applied KSR in its decision given that Gleizer had briefed his case prior to the Supreme Court's decision in KSR. Gleizer argues that in the absence of the Supreme Court's decision, the claims that the examiner had previously rejected would "pass into allowance." The Director argues that Gleizer had an opportunity to present any new arguments to the Board in response to KSR, but failed to avail himself of that opportunity. We agree. Gleizer failed to make any substantive arguments based on KSR in his request to the Board for

2009-1373

rehearing.  Moreover, the Board was bound to give the holding in <u>KSR</u> "full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." <u>Harper v. Va. Dep't of Taxation</u>, 509 U.S. 86, 97 (1993).

We have considered Gleizer's remaining arguments and find them unpersuasive. For the foregoing reasons, the Board correctly affirmed the examiner's rejection of claims 89-118 of Gleizer's application.  Its factual findings were supported by substantial evidence and its conclusions of law were not incorrect.  Accordingly, we <u>affirm</u>.